[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10023
_____

D.C. Docket No. 4:12-cr-00083-BAE-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIELLE LENISE BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(May 28, 2014)

Before CARNES, Chief Judge, HULL and GARZA,[*] Circuit Judges.

HULL, Circuit Judge:

_____

[*]Honorable Emilio M. Garza, United States Circuit Judge for the Fifth Circuit, sitting by designation.

Defendant-Appellant Danielle Brown pled guilty to knowingly receiving 481 counterfeit United States Postal Money Orders from a foreign country with the intent to pass and publish these same counterfeit money orders as true, in violation of 18 U.S.C. § 473. As part of her plea deal, Brown expressly agreed to waive any appeal to her conviction or sentence. Nonetheless, Brown now appeals her conviction and sentence, contending—for the first time—that her indictment was defective because it did not expressly allege the mens rea element of the § 473 offense. Brown argues that this omission from the indictment deprived the district court of jurisdiction to accept her guilty plea, thus rendering her conviction and sentence null and void. After careful review of the briefs and the record, and with the benefit of oral argument, we affirm Brown's conviction and sentence.

## I. BACKGROUND

### A.    Offense Conduct

In June 2011, federal agents intercepted a package mailed from Nigeria to Brown containing 361 counterfeit money orders totaling $351,975. When agents questioned her, Brown admitted that she received another such package earlier and was expecting to receive the package that was intercepted. She was not prosecuted for that conduct. Instead, she signed a "Voluntary Discontinuance Agreement" in which she (1) admitted receiving notice that the money orders were counterfeit, (2) acknowledged that similar conduct in the future could result in criminal

2

prosecution, and (3) agreed not to engage in such conduct. However, on March 16, 2012, federal agents intercepted another package destined for Brown, this one sent from Ghana and containing 481 counterfeit money orders totaling $471,380. An undercover agent delivered the package to Brown, and she accepted it, stating that she was waiting on its delivery. A search of her apartment later turned up an additional $217,696 in counterfeit money orders and cashier's checks. That search also revealed two U.S. Customs and Border Protection "notice of seizure letters" informing Brown that federal agents had seized two additional packages containing counterfeit money orders that amounted to a total of $688,035. Brown admitted that she read both of the letters.

Brown's role in the illegal counterfeiting scheme was to act as a "dispatcher." She would receive counterfeit money orders and send them to other people in the United States, either through the United States Postal Service (using counterfeit postage) or through Western Union, under a false name. For her efforts, Brown received $400 a month. Brown does not dispute that she knew her actions were illegal by at least July 2011, but she nevertheless continued to participate. In April 2012, she was indicted for these crimes.

**B.    Brown's Indictment**

Brown's indictment at issue here alleged two counts.  Both were based on Brown's receipt of the March 2012 package from the undercover agent.  Count One charged Brown with receiving the counterfeit money orders:

> That on or about March 21, 2012 . . . Brown, with the intent that the same be passed, published and used as true and genuine, did receive counterfeited obligations of the United States, that being approximately 481 counterfeit United States Postal Money Orders with a face value of $471,380, in violation of title 18, United States Code, Section 473.

Although the statute itself, 18 U.S.C. § 473, contains no mens rea requirement, it is well established that the required mental state for this crime is knowledge—a defendant must know that the instrument at issue was counterfeit. See United States v. Carll, 105 U.S. 611, 613 (1881).  However, the indictment did not explicitly allege in Count One that Brown knew the postal money orders were counterfeit at the time she received them.

Count Two of the indictment charged Brown with knowingly importing these counterfeit money orders:

> That on or about and between March 10, 2012 and March 21, 2012 . . . Brown, aided and abetted by others unknown to the grand jury, did fraudulently and knowingly, clandestinely import into the United States merchandise contrary to law, that being approximately 481 counterfeit United States Postal Money Orders with a face value of $471,380, in violation of Title 18, United States Code, Section 545.

(emphasis added)

4

The government contends that Counts One and Two should be read together; in other words, because Count Two uses the word "knowingly" to allege a different crime based on the same conduct that is described in Count One, the indictment as a whole charged Brown with knowing the counterfeit nature of the money orders.

In any event, Brown entered into a written plea agreement with the government in which she agreed to plead guilty to Count One in exchange for the dismissal of Count Two.  Brown also agreed to waive, "[t]o the maximum extent permitted by federal law,  . . . the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground."  The agreement recited the elements of the § 473 offense to which she would plead guilty, including the element that "the defendant then knew that the Postal Money Orders were counterfeit."  (emphasis added).  She also gave up "any defenses to the charges." However, the factual basis for the plea tracked the language of the indictment exactly—that is, it did not say that she knowingly received the counterfeit instruments.

At the plea hearing, the district court read the allegations contained in the indictment to Brown.  The court explained that by pleading guilty to Count One, Brown was admitting that she "received counterfeit obligation[s] of the United

5

States postal money orders" and that she "knew the postal money orders were not true; that in fact they were counterfeit" (emphasis added).  Brown agreed with these statements.

The district court then heard testimony from the federal agent involved in the investigation, Tyrone Tawil.  Agent Tawil testified that, when he interviewed Brown, she "admitted to me that she knew [the money orders] w[ere] counterfeit and she knew that it was wrong, but she continued to do it for the money."  Brown then confirmed that everything Agent Tawil said was true.  The court indicated its satisfaction with the factual basis for the plea and accepted it.

In preparation for sentencing, the probation office compiled a presentence investigation report (PSR) which calculated Brown's offense level to be 24 and her criminal history category to be I.  That combination yielded a guidelines sentence range of 51 to 63 months' imprisonment.  Brown did not object to the sentence or raise the indictment's alleged deficiency before the district court.  She did file several objections to the PSR related to enhancements or adjustments in her offense level, but the district court overruled them and adopted the PSR.  The court accordingly sentenced her to 63 months' imprisonment.

## II. DISCUSSION

Brown appeals her conviction and sentence.  For the first time in her case, Brown alleges that the indictment was defective on its face because Count One did

not include the required mens rea, an essential element of the § 473 crime.  As a result of this omission, Brown contends that the indictment does not state a federal crime and that the district court never had jurisdiction to sentence her.

In response, the government argues that Brown's indictment has no defect because the mens rea element can be inferred from other language in Count One. See United States v. Gray, 260 F.3d 1267, 1283 (11th Cir. 2001) (holding that a mens rea element "may be inferred from other allegations in the indictment"). Second, the government argues that the allegations in Count Two provide the mens rea element because Count Two charges Brown with "knowingly" importing the counterfeit money orders into the United States.  See United States v. Lang, 732 F.3d 1246, 1249 (11th Cir. 2013) (holding that the lenient standard applicable to indictments challenged for the first time on appeal allows a court to "consider the content of other counts of the indictment in order to give context to the challenged count so long as the defendant fails to show actual prejudice").

We need not reach these two arguments because even assuming Brown's indictment omits a required element of the offense and is defective, we agree with the government that this type of indictment defect is not jurisdictional and was waived by Brown's guilty plea.

"A guilty plea, since it admits all the elements of a formal criminal charge, waives all nonjurisdictional defects in the proceedings against a defendant."

7

United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986) (quoting United States v. Jackson, 659 F.2d 73, 74 (11th Cir. 1981)); see also United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").  On the other hand, jurisdictional error "can never be waived by parties to litigation" because it "implicates a court's power to adjudicate the matter before it."  United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002).  Therefore, the pivotal question here is whether Brown's claim that her indictment was defective for omitting the mens rea element is jurisdictional in nature.

Although this Court has not faced the precise indictment question presented in this case, we have addressed omissions in indictments before, including where an indictment omits an element of the charged crime.  And, in each case, we have found this type of indictment defect to be non-jurisdictional.  We review these cases first.

## A.    Non-jurisdictional Indictment Defects

In Alikhani v. United States, 200 F.3d 732 (11th Cir. 2000), the defendant pled guilty to an indictment charging him with violating executive orders and regulations forbidding all exports to and certain transactions with Libya.  Id. at 733.  Much later, Alikhani, a Cypriot, filed a coram nobis petition arguing that (1) the regulations and executive orders could apply only to U.S. persons, and (2) the

8

indictment's failure to allege that he was a U.S. person rendered the indictment defective.  Id. at 734.  He further contended that this indictment defect stripped the district court of jurisdiction.  Id.

This Court acknowledged that a "genuine claim that the district court lacked jurisdiction to adjudicate the petitioner guilty may well be a proper ground for coram nobis relief as a matter of law."  Id.   But this Court said that Alikhani's "statutory arguments, even if meritorious, would not implicate the district court's subject-matter jurisdiction."  Id.  Even if the government had to prove that Alikhani was a U.S. person, and even if the indictment failed to allege that Alikhani was a U.S. person, "the district court would still have had subject-matter jurisdiction over the case."  Id. at 735.

The Court explained that "[s]ubject-matter jurisdiction defines the court's authority to hear a given type of case," and that "Congress bestows that authority on lower courts by statute."  Id. at 734.  For federal crimes, Congress did so in 18 U.S.C. § 3231, providing district courts with "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  18 U.S.C. § 3231.   As such, all that mattered for purposes of the district court's subject-matter jurisdiction was that "[t]he United States filed an indictment charging Alikhani with violating 'laws of the United States.'"  Alikhani, 200 F.3d at 734.  This empowered the district court under § 3231 "to enter judgment upon

the merits of the indictment, such as dismissing the indictment on the ground that it does not allege facts showing that the defendant committed the charged offense." Id. at 734-35. This Court noted that Alikhani "has cited no case . . . holding that the failure of an indictment to state an offense—as Alikhani at bottom contends here—divests the district court of the power even to enter a judgment of acquittal." Id.[1]

Accordingly, Alikhani's arguments were not jurisdictional and could not be raised for the first time in a coram nobis petition. Id. For purposes of this case, it is important to note that Alikhani essentially argued that (1) U.S.-person status was an element of the offense and (2) the indictment's failure to allege this element deprived the district court of jurisdiction. But this Court held that even if the indictment had to allege that Alikhani was a U.S. person, the district court still had jurisdiction. In other words, the indictment's failure to allege U.S.-person status was not a jurisdictional defect—even if U.S.-person status were an element of the charged offense.

Additionally, in a trilogy of cases decided in the fall of 2001, this Court held that an indictment's omission of an element of the crime does not create a

---

[1]The Alikhani Court used two analogies to support its conclusion that the alleged indictment omission did not deprive the district court of jurisdiction over Alikhani's case. First, in the civil law context, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Alikhani, 200 F.3d at 735. Second, courts have rejected similar assertions, for example "that a failure of allegation or proof on an interstate-commerce element deprives the district court of jurisdiction." Id.

jurisdictional defect. United States v. Sanchez, 269 F.3d 1250, 1273-75 (11th Cir. 2001) (en banc); United States v. Cromartie, 267 F.3d 1293, 1295-97 (11th Cir. 2001); McCoy v. United States, 266 F.3d 1245, 1248-49 (11th Cir. 2001). In all three cases, the defendants challenged the jurisdiction of the district court on the basis that their indictments were defective under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). The Supreme Court held in Apprendi that, except for a prior conviction, any fact that increases the statutory-maximum penalty for a crime is an element of the charged offense and must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt. See id. at 476, 490, 120 S. Ct. at 2355, 2362-63. The Apprendi Court reached this conclusion because this type of sentencing fact is the "functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." Id. at 494 n.19, 120 S. Ct. at 2365 n.19.

The defendants in McCoy, Cromartie, and Sanchez all received enhanced sentences applicable to drug offenses involving certain drug types and drug quantities. McCoy, 266 F.3d at 1247; Cromartie, 267 F.3d at 1295; Sanchez, 269 F.3d at 1256-57. But their respective indictments did not allege the threshold levels of drug quantity required to trigger these enhanced penalties. McCoy, 266 F.3d at 1247; Cromartie, 267 F.3d at 1295; Sanchez, 269 F.3d at 1253. The three defendants argued that the district court lacked jurisdiction "because the grand jury

11

failed to set forth the critical element[] of . . . drug quantity in the indictment." Cromartie, 267 F.3d at 1295; see also McCoy, 266 F.3d at 1247-48; Sanchez, 269 F.3d at 1270.

This Court squarely rejected the jurisdictional argument in all three cases. In McCoy, the Court explained that "[a] jurisdictional defect is one that strips the court of its power to act and makes its judgment void."  266 F.3d at 1249 (quotation marks and alterations omitted).  But "[t]he constitutional right to be charged by a grand jury is a personal right of the defendant and does not go to the district court's subject matter jurisdiction because it may be waived."  Id. (citing to Rule 7(b) of the Federal Rules of Criminal Procedure, which allows a defendant to waive in open court prosecution by indictment).  In other words, "the constitutional right to be charged by grand jury indictment simply does not fit the mold of a jurisdictional defect, because it is a right that plainly may be waived."  Id.

The McCoy Court's conclusion was buttressed by many prior cases in which this Court employed a plain or harmless error analysis to Apprendi and analogous indictment errors.  Id.  at 1249 & n.4 (collecting cases).  If such indictment defects were jurisdictional, this Court could not have used plain or harmless error to affirm the sentences in those cases.  Id.  at 1249.  Even further, other circuits explicitly held that "'the failure of an indictment to allege an essential element of a crime does not deprive a district court of subject matter jurisdiction; rather, such a failure

12

is subject to harmless error review.'" Id. (quoting United States v. Prentiss, 256 F.3d 971, 981 (10th Cir. 2001) (en banc)).

This Court applied McCoy's holding and rationale in Cromartie, again rejecting the argument that the omission of the drug-type and-quantity elements in the defendant's indictment deprived the district court of jurisdiction. Cromartie, 267 F.3d at 1297. The Court noted that this type of indictment defect "was analogous to the omission of an element in a jury instruction," an error that is subject to harmless error analysis. Id.

Subsequently, the Sanchez en banc Court held that the alleged omission of an element from the indictment was not jurisdictional. 269 F.3d at 1273-75. The en banc Court explained that "[a] jurisdictional defect occurs only where a federal court lacks power to adjudicate at all. The constitutional rights to be charged by a grand jury, be informed of an accusation, and to have a jury trial are the personal rights of the defendant and do not go to the district court's subject matter jurisdiction." Id. at 1273-74. The Sanchez en banc Court therefore found no jurisdictional defect, even though the "indictment failed to allege an element of the charged offense." Id. at 1275 n.48.

The following spring, the Supreme Court decided the very question presented in Sanchez, Cromartie, and McCoy. In United States v. Cotton, the defendants argued that the district court lacked jurisdiction to impose an enhanced

13

sentence because their indictment failed to allege the drug-quantity element.  See Cotton, 535 U.S. at 627-28, 122 S. Ct. at 1783.  The Cotton defendants raised this alleged indictment defect for the first time on appeal.  Id. at 628-29, 122 S. Ct. at 1784.  The Fourth Circuit vacated the sentences, reasoning that "because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional, a [district] court is without jurisdiction to impose a sentence for an offense not charged in the indictment."  Id. at 629, 122 S. Ct. at 1784 (quotation marks omitted and alterations adopted).

A unanimous Supreme Court reversed the Fourth Circuit's holding that the omission of an element from the indictment deprived the district court of jurisdiction.  Noting that the Fourth Circuit's view stemmed from Ex parte Bain, 121 U.S. 1, 7 S. Ct. 781 (1887), the Cotton Court explained that "Bain's elastic concept of jurisdiction is not what the term 'jurisdiction' means today, i.e., the courts' statutory or constitutional power to adjudicate the case."  Cotton, 535 U.S. at 630, 122 S. Ct. at 1785 (quotation marks omitted).  "This latter concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.  Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court.  In contrast, the grand jury right can be waived."  Id.  (citations omitted).

14

The Cotton Court explained that "[p]ost-Bain cases confirm that defects in an indictment do not deprive a court of its power to adjudicate a case." Id. at 630-31, 122 S. Ct at 1785. "Thus, this Court some time ago departed from Bain's view that indictment defects are 'jurisdictional.'" Id. at 631, 122 S. Ct. at 1785. Insofar as [Bain] held that a defective indictment deprives a court of jurisdiction, Bain is overruled." Id. The Supreme Court declared itself "[f]reed from the view that indictment omissions deprive a court of jurisdiction." Id.

This review of the relevant precedent shows that an omission of an element from an indictment does not deprive the district court of jurisdiction, contrary to Brown's contention in this case.[2] Cotton, Sanchez, Cromartie, McCoy, and Alikhani all indicate that the omission of an element from the indictment is non-jurisdictional.

Brown attempts to distinguish these cases on the ground that most of them dealt with the omission of an Apprendi element—as opposed to the omission of a mens rea element. But this argument overlooks Apprendi's central lesson: that sentencing factors — "any fact[s] that increase[] the penalty for a crime beyond the prescribed statutory maximum," — are essential elements of the offense that must be included in the indictment and "proved beyond a reasonable doubt." 530 U.S.

---

[2]To the extent Brown suggests that United States v. Carll, 105 U.S. 611 (1881) supports her argument, we note that the Supreme Court in Carll addressed only the sufficiency of an indictment—not the district court's jurisdiction. See id. at 613. Instead, the Supreme Court's decision in Cotton and the cases cited therein discuss the impact of indictment defects on the district court's subject-matter jurisdiction.

15

at 490, 120 S. Ct. at 2362–63.  Therefore, the omitted elements in Cotton, Sanchez, Cromartie, and McCoy were just as essential as the omitted mens rea element in Brown's case.   And, the indictment omission in Brown's case is just as non-jurisdictional as it was in Cotton, Sanchez, Cromartie, and McCoy.[3]

This conclusion is also supported by a comparison with the few cases where this Court has found a jurisdictional defect in an indictment.   In those cases, the indictments failed to invoke the district court's subject-matter jurisdiction over all offenses against the laws of the United States.  We closely examine those cases too because doing so helps demonstrate both what makes an indictment defect jurisdictional and why Brown's indictment defect is not jurisdictional.

## B.    Jurisdictional Indictment Defects

Perhaps the best place to start is United States v. Peter, 310 F.3d 709 (11th Cir. 2002).  There, Peter pled guilty to specific conduct that the Supreme Court ultimately determined did not constitute a crime.  Id. at 710–11.  Peter's conviction

---

[3]Our sister circuits have reached the same conclusion, applying Cotton and its non-jurisdictional rule not only to drug cases with enhanced penalties but also to other federal crimes where an indictment omitted an essential element of the charged offense.  See, e.g., United States v. Scruggs, 714 F.3d 258, 262-64 (5th Cir.), cert. denied, 134 S. Ct. 336 (2013) (citing Cotton and rejecting the defendant's argument that the district court lacked jurisdiction because the information for  "honest-services fraud" failed to allege the judicially-created element of a "bribe," and thus stated a non-offense); United States v. George, 676 F.3d 249, 259-60 (1st Cir. 2012) (same); see also United States v. Rayborn, 312 F.3d 229, 231 (6th Cir. 2002) (holding, without citing Cotton, that while the interstate-commerce requirement is an "essential element" of the federal-arson statute, it "is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case," and that the district court therefore erred when it dismissed the indictment for lack of subject-matter jurisdiction because the interstate-commerce element was missing in the indictment).

was predicated on mail fraud; he admitted to making misrepresentations on applications for alcohol licenses which he mailed to state authorities. Id. at 711. But after Peter pled guilty and served his sentence, the Supreme Court held in Cleveland v. United States that the offense of mail fraud requires the object of the fraud to be property in the hands of the victim. 531 U.S. 12, 15, 121 S. Ct. 365, 368 (2000). The Supreme Court also concluded that state and municipal licenses do not rank as "property" in the hands of the official licensor for purposes of the mail fraud statute. Id.

Given that Peter's indictment alleged that the property in the victim's hands was a state license, those very allegations in the indictment affirmatively negated that Peter committed the offense of mail fraud. For that reason, the Peter Court granted coram nobis relief, rejecting the government's contention that the indictment defect was non jurisdictional and therefore waived. 310 F.3d at 714-16.

As the Peter Court explained, the government's "proof of the alleged conduct, no matter how overwhelming, would [bring] it no closer to showing the crime charged than would . . . no proof at all." Id. at 715. The problem is not that the government failed to allege a fact or an element that would have made the indictment's criminal charge complete. Instead, "it is that the Government affirmatively alleged a specific course of conduct that is outside the reach of the mail fraud statute." Id. Importantly, "Peter's innocence of the charged offense

17

appears from the very allegations made in the superseding information, not from the omission of an allegation requisite to liability." Id.

The Peter Court noted the critical distinction between mere "indictment omissions," which are non-jurisdictional defects, and "the affirmative allegation of specific conduct that is not proscribed by the charging statute," which is a jurisdictional defect. Id. at 714. Put differently, there is no jurisdictional defect when the "indictment fail[s] to allege an element of the charged offense," but there is one when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute. Id. Brown's indictment omitted the mens rea element, but that is merely "an allegation requisite to liability," which Peter teaches does not implicate a court's jurisdiction. Id. at 715.

The other cases in which this Court has found a jurisdictional indictment defect further demonstrate this point. In United States v. Meacham, 626 F.2d 503 (5th Cir. 1980),[4] the indictment charged a conspiracy to attempt to import marijuana, but there was no such "conspiracy to attempt" offense enacted in the United States Code. Id. at 509-10. Because the Meacham indictment contained affirmative allegations of conduct that was not a crime against the laws of the

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

18

United States, the indictment did not invoke the district court's jurisdiction to enter judgment or accept a guilty plea.[5] Id.

Similarly, in United States v. Izurieta, 710 F.3d 1176 (11th Cir. 2013), the indictment contained an affirmative allegation that the defendant violated a regulation that carried only civil penalties and was not intended to impose criminal liability.   Id. at 1179.  Thus, the indictment affirmatively alleged facts that negated a crime against the laws of the United States, leaving the district court without jurisdiction.  See id.

In other words, Meacham, Peter, and Izurieta are examples of indictments that affirmatively allege facts that conclusively negated the existence of any offense against the laws of the United States.  These cases involve indictments charging (1) a crime that simply did not exist in the United States Code, Meacham, 626 F.2d at 505, 509-10; (2) conduct that undoubtedly fell outside the sweep of the mail fraud statute, Peter, 310 F.3d at 710–11; and (3) a violation of a regulation that was not intended to be a "law" for purposes of criminal liability, Izurieta, 710 F.3d at 1179, 1184.   In those specific and narrow circumstances, a district court

---

[5]Meacham, a pre-1981 decision from the Fifth Circuit, remains good law in our Circuit. It is worth noting that, in light of Cotton, the Fifth Circuit has "disavowed Meacham's classif[ication] as jurisdictional the requirement that the indictment state an offense." Scruggs, 714 F.3d at 263 (quoting United States v. Cochran, 302 F.3d 279, 283 (5th Cir. 2002)).  But, consistent with our decision today, the Fifth Circuit explained that "the statutory offense alleged in the [Meacham] indictment did not exist," and that Meacham "may remain good law in that very narrow circumstance because an indictment that charges a violation of a non-statute does not give rise to subject matter jurisdiction under [18 U.S.C.] § 3231." Scruggs, 714 F.3d at 263 n.22.

19

indeed lacks subject-matter jurisdiction because the indictment fails to invoke the district court's statutory authority under 18 U.S.C. § 3231 over "offenses against the laws of the United States."  See Alikhani, 200 F.3d at 734-35 (holding that the district court's subject matter jurisdiction depends on whether the indictment charged the defendant with violating "laws of the United States").

Both Peter and Izurieta acknowledged Cotton, where the Supreme Court stated that "defects in an indictment do not deprive a court of its power to adjudicate a case."  535 U.S. at 631, 122 S. Ct at 1785.  Notably, this Court concluded in Izurieta that Cotton did not alter "our established precedent recognizing that the failure to allege a crime in violation of the laws of the United States is a jurisdictional defect."  Izurieta, 710 F.3d at 1179; see also Peter, 310 F.3d at 714 ("[T]he Supreme Court [in Cotton] did not address whether the insufficiency of an indictment assumes a jurisdictional dimension when the only facts it alleges, and on which a subsequent guilty plea is based, describe conduct that is not proscribed by the charging statute.").

Thus, we learn from our case law that in examining whether an indictment defect is jurisdictional, we must ask the question whether the indictment charged the defendant with a criminal "offense[] against the laws of the United States."  In Brown's case, the answer is yes.  The indictment charged Brown with violating 18 U.S.C. § 473, a valid federal statute in the United States Code.  Brown's

indictment not only cites the statute, it also tracks the statutory language of § 473 in its entirety. As such, § 3231 empowered the district court with jurisdiction to act over Brown's indictment. See Alikhani, 200 F.3d at 734-35.

The district court's power over Brown's case did not vanish simply because the indictment omitted one element of the charged offense. The omission of an element may render the indictment insufficient, see, e.g., Lang, 732 F.3d at 1247 (holding that an indictment must set forth all essential elements of the offense), but it does not strip the district court of jurisdiction over the case, see Cotton, 535 U.S. at 630-31, 122 S. Ct. at 1785; Sanchez, 269 F.3d at 1273-75; Cromartie, 267 F.3d at 1295-97; McCoy, 266 F.3d at 1249; Alikhani, 200 F.3d at 734-35 (all holding that the omission of an essential element of the offense does not deprive the district court of jurisdiction over the case); see also Peter, 310 F.3d at 714-15.

So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an "offense against the laws of the United States" and, thereby, invokes the district court's subject-matter jurisdiction. Alikhani, 200 F.3d at 734-35. The omission of an element of that offense does not mean that the indictment fails to do so, see id.; it means only that the indictment is missing "an allegation requisite to liability," Peter, 310 F.3d at 715. This may allow the defendant to argue before a guilty plea that the

21

indictment is insufficient and should be dismissed—but it does not deprive the district court of jurisdiction to act over the indictment or to accept a guilty plea.[6]

In sum, we hold that the omission from indictment of an element of the charged offense is a non-jurisdictional defect.  Given that the omission in Brown's indictment is not jurisdictional, Brown waived any challenge to her indictment in two different ways: First, she entered into an unconditional guilty plea; second, she signed an appeal waiver.  Either one of these actions alone waived Brown's belated challenge to the indictment.  See Fairchild, 803 F.2d at 1124; Jackson, 659 F.2d at 74; Patti, 337 F.3d at 1320.

### III. CONCLUSION

For the foregoing reasons, we affirm Brown's conviction and sentence.

---

[6]We note that Brown makes no argument that the statute charged in her indictment is preempted or unconstitutional.  See United States v. Tomeny, 144 F.3d 749, 751 (11th Cir. 1998) (stating that a defendant's argument that the charged statute was preempted is a jurisdictional claim); United States v. Saac, 632 F.3d 1203, 1208 (11th Cir. 2011) (stating that a defendant's argument that the charged statute was unconstitutional is a jurisdictional claim).