**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 25-11054
Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

TAVIO JAVON MCNEARY, JR.,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:24-cr-00008-WLS-ALS-1

————————————————

Before JILL PRYOR, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Tavio McNeary, Jr. appeals his conviction for possessing a firearm as a convicted felon, on the ground that his prior Georgia

marijuana conviction does not qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b)(1) and that 18 U.S.C. §§ 922(g)(1) and 924(a)(8) violate the Second Amendment facially and as applied to him.  The government moves for summary affirmance, arguing that our precedent forecloses McNeary's claims.  After careful review, we grant the government's motion and summarily affirm.

I.

Summary disposition is appropriate either where time is of the essence, like in "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where . . . the appeal is frivolous."  *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).[1]

"We review de novo whether a prior conviction qualifies as a 'controlled substance offense' under the Guidelines."  *United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019).  The Sentencing Guidelines provide that a defendant's base offense level is 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).  The Guidelines define "controlled substance offense,"

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

in relevant part, as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b)(1); *see also id.* § 2K2.1, cmt. n.1.

Under federal law, controlled substances are drugs or other substances listed on the federal drug schedules. 21 U.S.C. § 802(6). In August 2021 and March 2025, marijuana was included in federal Schedule I and defined as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin," except for "hemp," "the mature stalks of such plant," and related things. 21 U.S.C. §§ 802(16), 812 (Schedule I at (c)(10)) (2021, 2025).

Under Georgia law, a "controlled substance" is "a drug, substance, or immediate precursor in" the Georgia schedules and the federal schedules. O.C.G.A. § 16-13-21(4) (2013–2025). Marijuana is a schedule I substance under federal law, but it is not listed in the Georgia schedules. *See* 21 U.S.C. § 812 (2013–2025); 21 C.F.R. § 1308.11(d)(23) (2013, 2015, 2019, 2021, 2025); O.C.G.A. §§ 16-13-25 through 16-13-29 (2013–2025). Under Georgia law, "[i]t shall be unlawful for any person to possess, have under his or her control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." O.C.G.A. § 16-

13-30(j)(1) (2013–2025).  In August 2021 and March 2025, Georgia defined marijuana as:

> all parts of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin, but shall not include samples as described in subparagraph (P) of paragraph (3) of Code Section 16-13-25; shall not include the completely defoliated mature stalks of such plant, fiber produced from such stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination; and shall not include hemp or hemp products as such terms are defined in Code Section 2-23-3.  Such term shall not include products approved by the federal Food and Drug Administration under Section 505 of the federal Food, Drug, and Cosmetic Act.

*Id.* § 16-13-21(16) (2021; 2025).

The Georgia Court of Appeals discussed the definition of "controlled substance" under Georgia law in *C.W. v. Department of Human Services*, a child endangerment case in which the Division of Family and Children Services placed a mother's name on a child abuse registry because she allegedly "committed child abuse by unlawfully using" the controlled substance of marijuana while pregnant.  836 S.E.2d 836, 837 (Ga. Ct. App. 2019).  Georgia law described "prenatal abuse" as including the unlawful use of "any controlled substance" as the term was defined by O.C.G.A. § 16-13-21.

*Id.* The court determined that the mother had not committed prenatal abuse because "controlled substances" were the substances listed on "both Georgia *and* federal [drug] schedules" and because marijuana was not included on Georgia's drug schedules, it was "not a controlled substance as defined by O.C.G.A. § 16-13-21." *Id.*

In *United States v. Dubois*, a defendant challenged his sentence for unlawful firearm possession based, in part, on his claim that a 2013 Georgia conviction for possession with intent to distribute marijuana should not have qualified as a controlled substance offense within the meaning of § 4B1.2(b) for purposes of sentencing under § 2K2.1(a)(4)(A). 94 F.4th 1284, 1288, 1289–90, 1294–95 (11th Cir. 2024) ("*Dubois I*"), *cert. granted, vacated*, 145 S. Ct. 1041 (2025), *reinstated by* 139 F.4th 887 (11th Cir. 2025) ("*Dubois II*"), *cert. denied.*, 2026 WL 135685 (U.S. Jan. 20, 2026). We explained that we must use the "categorical approach" to determine whether "the least culpable conduct prohibited under the state law" constituted a "controlled substance offense" under the Guidelines. *Id.* at 1295 (citation modified). And, in answering "whether marijuana is a 'controlled substance' under the guideline definition of 'controlled substance offense,'" we recognized that we had to address "two subquestions that ha[d] divided our sister circuits." *Id.*

For question one, we agreed with the majority approach, that for prior state convictions, "[a] drug regulated by state law is a 'controlled substance' for state predicate offenses, even if federal law does not regulate that drug." *Id.* at 1296. We continued:

"More precisely, state law defines which drugs qualify as a 'controlled substance' if the prior conviction was under state law," while for federal convictions, federal law defines "controlled substance[s.]" *Id.* (citation modified). This is because the Guideline text "makes clear that a 'controlled substance' includes a substance that is regulated only by the law of the state of conviction." *Id.* We added that we would respect the Commission's citation to the United States Code when it detailed the "crime of violence" career offender qualification *right before* it detailed the controlled substance offense, without any citation to the federal Controlled Substances Act ("CSA"). *Id.* at 1296–97.

We explained that rejecting "the federal-law-only approach" aligns with our precedent, and "the identity of 'marijuana' as the substance possessed is undoubtedly an element of Dubois's statute of conviction, which criminalizes posses[ion] with intent to distribute marijuana." *Id.* at 1297 (citation modified) (quoting O.C.G.A. § 16-13-30(j)(1) (2013)). We disagreed with the opinions of the Second and Ninth Circuits, which we found to be inapposite to the plain meaning of the Guideline and overly reliant on the presumption that federal law is independent of state law and on the desire for uniformity in sentencing. *Id.*

In deciding that the law of the sovereign of conviction will define what substances constitute "'controlled substance[s]' under the guidelines," we noted "that the Georgia and federal definitions of 'marijuana' were the same at all relevant times: both definitions included hemp" when Dubois received his "state conviction but

excluded it at the time of his federal sentencing." *Id.* at 1297–98. Nevertheless, we rejected the parties' claims that we "need not decide which sovereign's law controls to decide this appeal" because the "answer to this 'whose law' question inform[ed] our answer to the 'what time' question that follows." *Id.* at 1298.

As for the timing question, we held that courts must look to state law and state drug schedules *at the time of the prior state conviction*, rather than to the law at the time of federal sentencing, to decide if a drug is a controlled substance. *Id.* at 1298–1300. This approach, we explained, follows the text of the Guidelines, *id.* ("The guideline assigns the defendant a base offense level of 20 if he 'committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense.'" (quoting U.S.S.G § 2K2.1(a)(4)(A))), and Supreme Court precedent, *id.* ("[J]ust as the phrase 'previous convictions' in the [Armed Career Criminal] Act requires a backward-looking approach in defining 'controlled substance' . . . , the phrase 'subsequent to sustaining one felony conviction' in the guidelines requires a backward-looking approach in defining 'controlled substance' . . . ." (citing *McNeill v. United States*, 563 U.S. 816 (2011))). Nor does the inclusion of some present-tense language change that result, since an ordinary reader would understand the use of present tense when discussing past convictions. *Id.* Moreover, allowing subsequent changes in state law to erase an earlier conviction under the Guidelines would "yield 'dramatically different federal sentences' for defendants

'who violated [the same statute] on the same day'" but were federally sentenced on different dates.  *Id.* (quoting *McNeill*, 563 U.S. at 823).

Further, we explained that the two Circuits that ignored *McNeill*'s reasoning "adopted a time-of-federal-sentencing interpretation" and "applied the federal-law-only approach," because *McNeill* "involved an intervening change in *state law*, not federal law." *Id.* at 1300.  We did not determine if the federal-versus-state law "distinction warrants a departure from *McNeill*'s reasoning, [because] the distinction [wa]s absent" in *Dubois*, which was "hold[ing] that *state law* defines which drugs are controlled substances for state predicate offenses." *Id.*  Thus, we concluded that "a 'controlled substance' under [§] 4B1.2(b)'s definition of 'controlled substance offense' is, for prior state offenses, a drug regulated by state law at the time of the conviction," which is true "even if [the substance] is not federally regulated, and even if it is no longer regulated by the state at the time of federal sentencing." *Id.*  So, because "Georgia law regulated marijuana -- including hemp -- at the time of Dubois's 2013 conviction," the district court properly found his prior conviction to be a "controlled substance offense" and properly enhanced his base offense level under § 2K2.1(a)(4)(A). *Id.*

In *United States v. Kennedy*, the defendant challenged the district court's finding that he was a "career offender" under U.S.S.G. § 4B1.1(a) because, he argued, his 2015 Georgia possession of marijuana with the intent to distribute conviction did not qualify as a "controlled substance offense" under § 4B1.2(b).  146 F.4th 1054,

1071 (11th Cir. 2025).  We held that, even if "there's a meaningful mismatch between Georgia's definition of marijuana and the CSA's definition of marijuana, any inconsistency does not matter for purposes of applying the career offender sentencing enhancement." *Id.*  We reasoned that "because '*state law* defines which drugs qualify as a "controlled substance" if the prior conviction was under state law,'" when "[a] drug [is] regulated by state law[, it] is a 'controlled substance' for state predicate offenses under the sentencing guidelines, even if federal law does not regulate that drug."  *Id.* at 1071–72 (citation modified).  Hence, "Kennedy's marijuana conviction was a controlled substance offense under state law at the time of his state conviction," and it qualified as a predicate offense to the Guidelines' career offender enhancement.  *Id.* at 1072.

Under the prior panel precedent rule, we must follow prior binding precedent unless it is overruled or undermined to the point of abrogation by our en banc Court or the Supreme Court.  *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).  The rule applies "regardless of whether the later panel believes the prior panel's opinion to be correct, and there is no exception to the rule where the prior panel failed to consider arguments raised before a later panel."  *Id.*  "But questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *United States v. Jackson*, 55 F.4th 846, 853 (11th Cir. 2022) (citation modified).  Similarly, "assumptions are not holdings."  *Id.* at 854 (citation modified).

In fact, the prior panel precedent rule "applies only to holdings, not dicta in our prior opinions." *Gillis*, 938 F.3d at 1198 (citation modified). "The holding of a case comprises both the result of the case and those portions of the opinion necessary to that result." *Id.* (citation modified). No matter what an opinion says, "the decision can hold nothing beyond the facts of that case." *Id.* (citation modified). On the other hand, "dicta is a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case." *Id.* (citation modified). Nevertheless, "in this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings." *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008).

Here, the government is clearly correct as a matter of law that McNeary's argument -- that his prior Georgia marijuana conviction does not qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b)(1) -- is foreclosed by binding authority. *Groendyke Transp., Inc.*, 406 F.2d at 1162.

As for McNeary's claim that federal law should define "controlled substance offenses" under § 4B1.2(b)(1) because our statement in *Dubois I* that "controlled substance offenses" are defined by the convicting sovereign's law was only dicta, we disagree. The panel in *Dubois I* found it necessary to answer the "whose law question" in explaining our reliance on *McNeill* and in answering the "what time" question, and necessary portions of our opinions are holdings. *Dubois I*, 94 F.4th at 1297–1300; *Gillis*, 938 F.3d at 1198.

And, as we've said, "[t]he prior panel precedent rule applies regardless of whether the later panel believes the prior panel's opinion to be correct." *Gillis*, 938 F.3d at 1198. Further, there is no substantial question about the outcome of this case -- the answer to the "whose law question" was clearly a holding in *Kennedy*. *Groendyke Transp., Inc.*, 406 F.2d at 1162; *Kennedy*, 146 F.4th at 1071–72; *Dubois I*, 94 F.4th at 1296–1300. Accordingly, the prior panel precedent rule forecloses all of McNeary's arguments that federal law should define a "controlled substance offense" under the Guidelines, and we are required to affirm the district court's use of state law to define a "controlled substance offense" under the Guidelines. *Gillis*, 938 F.3d at 1198.

Citing to a Georgia state law case and a Georgia statute, McNeary also argues that under Georgia law, marijuana is not a "controlled substance." *C.W.*, 836 S.E.2d at 837; O.C.G.A. § 16-13-21(4) (2013–2025). However, in both *Dubois I* and *Kennedy*, we relied on the theory that if a drug is regulated by Georgia law, it is a "controlled substance" under the Guidelines, and marijuana was regulated by Georgia law at the time of McNeary's conviction. *Dubois I*, 94 F.4th at 1300; *Kennedy*, 146 F.4th at 1071–72; O.C.G.A. § 16-13-30(j)(1) (2021). Therefore, as a matter of law, the district court did not err when it determined that for the purposes of U.S.S.G. § 4B1.2(b), McNeary's Georgia marijuana conviction constitutes a "controlled substance offense." *Gillis*, 938 F.3d at 1198; *Dubois I*, 94 F.4th at 1294–1300; *Kennedy*, 146 F.4th at 1071–72; *Groendyke Transp., Inc.*, 406 F.2d at 1162.

II.

Ordinarily, we review the constitutionality of a statute de novo. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). But where a defendant failed to raise the issue of the statute's constitutionality in the district court, we review the issue only for plain error. *Id.* To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* If the explicit language of a statute or rule does not resolve an issue, plain error lies only where our precedent or the Supreme Court's precedent directly resolves the issue. *United States v. Moore*, 22 F.4th 1258, 1266 (11th Cir. 2022).

Defects in subject matter jurisdiction are never "forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). We review a challenge to the district court's subject matter jurisdiction "de novo even when it is raised for the first time on appeal." *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016) (citation modified). "[J]urisdictional errors are not subject to plain- or harmless-error analysis." *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001). Notably, the Supreme Court has held that indictment omissions do not "deprive a court of jurisdiction." *Cotton*, 535 U.S. at 629–34. Further, an indictment that "charges the defendant with violating a valid federal statute as enacted in the United States

Code" is sufficient to invoke the district court's jurisdiction to adjudicate all violations of United States laws under 18 U.S.C. § 3231. *United States v. Brown*, 752 F.3d 1344, 1348, 1353–54 (11th Cir. 2014). However, "when the indictment itself fails to charge a crime, the district court lacks jurisdiction." *United States v. Moore*, 954 F.3d 1322, 1334 (11th Cir. 2020). The Supreme Court has held that a criminal defendant's guilty plea does not bar a subsequent constitutional challenge to the statute of conviction. *Class v. United States*, 583 U.S. 174, 178 (2018). At the same time, the Supreme Court has held that "[e]ven the unconstitutionality of the statute under which the proceeding is brought does not oust a court of jurisdiction." *United States v. Williams*, 341 U.S. 58, 66 (1951).

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. Section 922(g) of Title 18 of the U.S. Code prohibits anyone who has been convicted of a crime punishable by more than one year of imprisonment from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(1). Section 924(a) explains that anyone who violates 18 U.S.C. § 922(g)(1) "shall be fined" or "imprisoned for not more than 15 years, or both." *Id.* § 924(a)(8).

In *District of Columbia v. Heller*, the Supreme Court considered a Second Amendment challenge to a D.C. law that barred the private possession of handguns in homes. 554 U.S. 570, 573–75 (2008). After considering both the text and history of the Second Amendment, the Court concluded that it granted "an individual

right to keep and bear arms." *Id.* at 595. The Supreme Court ultimately held that the "ban on handgun possession in the home violate[d] the Second Amendment." *Id.* at 635. In so doing, the Court acknowledged that the Second Amendment right to keep and bear arms was "not unlimited," emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626. The Supreme Court labeled these restrictions as "presumptively lawful," specifically ruling that the District of Columbia had to allow Heller to carry his handgun in his home "[a]ssuming that Heller [was] not disqualified from the exercise of Second Amendment rights." *Id.* at 627 n.26, 635. The Supreme Court also has held "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." *McDonald v. City of Chicago*, 561 U.S. 742, 786, 791 (2010) (repeating *Heller*'s assurances that the holding was not intended to question the firearm bans for felons and individuals with mental illnesses).

After *Heller*, we considered, and rejected, a constitutional challenge to § 922(g)(1)'s prohibition on felons possessing firearms. *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010) (per curiam). We explained that "the first question to be asked" under *Heller* was "whether one is *qualified* to possess a firearm." *Id.* at 770. We observed that *Heller*'s clarification that it should not be read to question prohibitions on felons' possession of firearms "suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* at 771. We added that *Heller* recognized that prohibiting felons

from possessing firearms was "a presumptively lawful longstanding prohibition." *Id.* (citation modified). Therefore, we held that "statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people," including convicted felons. *Id.*

In a footnote, we rejected Rozier's argument that *Heller's* statement that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" was merely dicta and should not be afforded authoritative weight. *Id.* at 771 & n.6 (quoting *Heller*, 554 U.S. at 626). We reasoned that (1) to the extent the statement "limit[ed] the Court's opinion to possession of firearms by *law-abiding* and *qualified* individuals," it was necessary to the decision reached; and (2) even if the statement were superfluous to *Heller's* central holding, we would still afford it "considerable weight," since Supreme Court dicta is not to be lightly ignored. *Id.* Ultimately, we concluded that "the fact that Rozier may have possessed the handgun for purposes of self-defense (in his home)" was immaterial because felons as a class could be excluded from firearm possession. *Id.* at 771.

Several years later, in *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court considered a Second Amendment challenge to New York's gun-licensing regime that limited when a law-abiding citizen could obtain a license to carry a firearm outside the home. 597 U.S. 1, 11–13 (2022). The Court recognized that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10.

The Court explained that, to determine whether a restriction on firearms was constitutional, courts must begin by asking whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. *Id.* at 17. If the regulation covers this conduct, the court may uphold it only if the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. *Bruen* applied "*Heller*'s text-and-history standard" to the challenged statute to find it unconstitutional. *Id.* at 38–39. And, like *Heller*, *Bruen* described Second Amendment rights as elevating "'above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Id.* at 26 (quoting *Heller*, 554 U.S. at 635).

After *Bruen*, we rejected a defendant's Second Amendment challenge to § 922(g)(1). *Dubois I*, 94 F.4th at 1291–93. We held that the challenge was foreclosed by *Rozier*, which "interpreted *Heller* as limiting the [Second Amendment] right to 'law-abiding and qualified individuals' and as clearly excluding felons from those categories by referring to felon-in-possession bans as presumptively lawful." *Id.* at 1293 (quoting *Rozier*, 598 F.3d at 771 & n.6). As for whether *Bruen* abrogated *Rozier*, we observed that, even in *Bruen*, the Supreme Court continued to describe the right to bear arms "as extending only to 'law-abiding, responsible citizens.'" *Id.* (quoting *Bruen*, 597 U.S. at 26). We also rejected the defendant's argument that *Bruen* abrogated all prior Second Amendment precedent based on a two-step, means-end scrutiny test because *Rozier* was not based on that framework. *Id.* Instead, *Rozier* was based on our

understanding that *Heller* limited the Second Amendment's protections "to 'law-abiding and qualified individuals'" and excluded "felons from those categories." *Id.* (quoting *Rozier*, 598 F.3d at 771 & n.6). Because *Bruen* "repeatedly stated that its decision was faithful to *Heller*," we held that *Bruen* did not abrogate *Rozier* based on "*Rozier*'s reliance on *Heller*." *Id.* We concluded that we were bound by *Rozier* and, because *Rozier* foreclosed a Second Amendment challenge to § 922(g)(1), we affirmed the defendant's conviction. *Id.*

In *United States v. Rahimi*, the Supreme Court rejected a Second Amendment challenge to § 922(g)(8), the federal statute that "prohibits an individual subject to a domestic violence restraining order from possessing a firearm" when the "order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." 602 U.S. 680, 684–85, 693 (2024) (quoting 18 U.S.C. § 922(g)(8)). In noting that *Heller* did not establish "a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home," the Supreme Court pointed out *Heller*'s statement that the prohibitions "on the possession of firearms by 'felons and the mentally ill' are 'presumptively lawful.'" *Id.* at 699 (quoting *Heller*, 554 U.S. at 626, 627 & n.26). However, the Court did not accept the government's argument that a person could be disarmed because he was not "responsible." As it explained, the term was vague, it was used in *Heller* and *Bruen* simply "to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right," and those cases "did not define the term" or say anything "about the status of

citizens who were not 'responsible'" since "[t]he question was simply not presented." *Id.* at 701–02.

Thereafter, the Supreme Court granted certiorari in *Dubois I* and vacated and remanded the case to us for further consideration in light of *Rahimi*. *Dubois v. United States*, 145 S. Ct. at 1041. On remand in *Dubois II*, we held that "*Rahimi* -- like . . . *Bruen* . . . -- did not abrogate our holding in *Rozier* that [§] 922(g)(1) is constitutional under the Second Amendment." 139 F.4th at 889. Accordingly, we reinstated our prior opinion and affirmed Dubois's convictions and sentence, reaffirming the precedential authority of *Rozier* over Second Amendment challenges to § 922(g)(1). *Id.* at 889, 892–94. We noted that the only time that *Rahimi* "mentioned felons was to reiterate *Heller*'s conclusion that" prohibiting felons from possessing firearms is "presumptively lawful." *Id.* at 893 (citation modified). "This endorsement of the underlying basis for our prior holding that [§] 922(g)(1) does not violate the Second Amendment suggests that *Rahimi* reinforced -- not undermined -- *Rozier*." *Id.* at 893. We said we needed "clearer instruction from the Supreme Court before we may reconsider the constitutionality of [§] 922(g)(1)." *Id.*

Turning to McNeary's Second Amendment challenge before us, we note that he may bring a constitutional argument on direct appeal, despite having pled guilty. *Class*, 583 U.S. at 178. Further, to the extent the parties dispute the applicable standard of review, we need not resolve the issue; McNeary's facial and as applied constitutional challenges fail even under de novo review.

Indeed, the government is clearly correct, as a matter of law, that NcNeary's argument as to the facial constitutionality of § 922(g)(1) is foreclosed by our binding precedent. In *Dubois II*, we held that *Rahimi* did not abrogate our decision in *Rozier*, which upheld the felon-in-possession ban in § 922(g)(1) against a Second Amendment challenge. *Dubois II*, 139 F.4th at 893–94; *Groendyke Transp., Inc.*, 406 F.2d at 1162. The same reasoning forecloses McNeary's claim that § 924(a)(8) -- which describes the punishments for violating § 922(g)(1) -- violates the Second Amendment, because *Rozier* inclusively held that "statutory restrictions of firearm possession, *such as* § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people." *Rozier*, 598 F.3d at 771 (emphasis added); *see also Dubois II*, 139 F.4th at 893–94.

As for McNeary's as-applied challenge, our binding precedent holds that bans on felon firearm possession do not offend the Second Amendment in light of this nation's "longstanding prohibitions on the possession of firearms by felons," regardless of the particular circumstances of any defendant. *Rozier*, 598 F.3d at 770–71 (quoting *Heller*, 554 U.S. at 626). McNeary admitted his guilt as to the elements that qualified him as a felon, and thus, he may be disqualified from Second Amendment protections under the circumstances he points to in his as-applied challenge. *Id.* at 771. Accordingly, we **GRANT** the government's motion for summary affirmance.

**AFFIRMED.**