[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14714
Non-Argument Calendar
_____

D.C. Docket No. 7:15-cr-00188-MHH-JHE-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSWALDO VARGAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 16, 2017)

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Alabama law enforcement officers discovered cocaine and methamphetamine in a vehicle that Oswaldo Vargas was riding in.  He was charged with conspiracy to possess with intent to distribute and possession with intent to distribute those drugs.  The district court denied Vargas' motion to suppress, finding that the traffic stop that led to the discovery of the drugs did not violate the Fourth Amendment's prohibition of unreasonable seizures.  Vargas later pleaded guilty to both charges, and he has appealed the denial of his motion to suppress.

## I.

Corporal Shone Minor of the Alabama Law Enforcement Agency pulled a Ford Freestyle SUV with a Texas license plate to the side of Interstate 20/59 for "following too close" (tailgating) and for failing to maintain its lane.  The driver, Antonio Castro, immediately admitted that he did not have a driver's license, so Minor asked Castro to come back to Minor's patrol car, where Minor asked him a series of routine questions.  When Minor asked Castro where he was going, Castro said Alabama, then changed his answer to Georgia, before finally clarifying that he was going to Atlanta specifically.  He also stated that he was driving from El Paso, although he later revealed that he lived in New Mexico.  Two minutes and fifty-

2

seven seconds after he made the traffic stop, Minor informed Castro that he was issuing him a warning for a "following too close" violation.[1]

For an additional three minutes Minor continued asking Castro questions in order to fill out the written warning. Then Minor approached the vehicle's passenger, Vargas, to determine whether he could legally operate the vehicle once the stop was completed. Vargas admitted that he did not have a driver's license either. After that, Minor spent about twelve minutes working with Castro and Vargas in an attempt to determine how to safely and legally get the car moved. For example, he asked them if they knew anyone who could come drive the vehicle for them.

Eighteen minutes and thirty-four seconds into the traffic stop — about fifteen minutes after Minor first informed Castro that he was issuing a warning — Minor asked Castro for consent to search the vehicle. Castro consented. The search, conducted by Minor and a partner, revealed cocaine and methamphetamine hidden in the vehicle.

A grand jury charged Vargas with conspiracy to possess with intent to distribute cocaine and methamphetamine and substantive possession with intent to distribute cocaine and methamphetamine, both violations of 21 U.S.C. § 841. Before trial, Vargas moved to suppress the government's evidence, contending that

---

[1] Statements about the timing of various events during the traffic stop come from the timestamp on Minor's dashboard camera, which recorded the entire stop.

Minor had violated the Fourth Amendment by continuing the stop after he informed Castro that he was issuing him a warning.

Minor was the sole witness at the suppression hearing.  He testified that under state law he could not allow Castro or Vargas to drive the vehicle away from the traffic stop since neither one had a driver's license.  He explained that he eventually asked for consent to search the vehicle because he found numerous aspects of Castro and Vargas' trip to be suspicious and he suspected they may have been involved in illegal activity.

The district court denied Vargas' motion to suppress.  He pleaded guilty, but reserved the right to appeal the court's ruling on his suppression motion.  He was sentenced to 123 months imprisonment.

## II.

Vargas contends that the length of the traffic stop violated the Fourth Amendment.  "We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, examining the district court's findings of fact for clear error and the district court's application of law to those facts de novo."  United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007).

As a general matter, a traffic stop "exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."  Rodriguez v. United States, 575 U.S. __, 135 S. Ct. 1609,

4

1612 (2015). The Supreme Court explained in Rodriguez that, in addition to issuing a ticket or warning, a police officer's "mission includes ordinary inquiries incident to [the traffic] stop." Id. at 1615 (quotation marks omitted). Those inquiries "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Id. Because they "serve the same objective as enforcement of the traffic code" — namely, "ensuring that vehicles on the road are operated safely and responsibly" — those inquiries do not unconstitutionally extend the traffic stop. See id. at 1614–15.

In the Rodriguez case the officer who made the stop had completed the "ordinary inquiries," given the driver back his documents, and handed him a written warning. Id. at 1613. It was only then, after he had gotten those tasks "out of the way" (in his own words), that the officer asked the driver to consent to a drug dog sniff of the vehicle. Id. The driver refused to consent. Id. The officer then ordered him out of the vehicle and made him stand in front of the patrol car until another officer arrived and the dog sniff was conducted. Id. "All told, seven or eight minutes had elapsed from the time [the officer] issued the written warning until the dog indicated the presence of drugs." Id. The Supreme Court held that the search, resulting from that extension of the detention, was unconstitutional. Id. at 1615–16.

5

Vargas argues that his stop is analogous to the one in <u>Rodriguez</u> because Minor completed the matter for which the stop was made at the time he informed Castro, two minutes and fifty-seven seconds into the stop, that he was issuing Castro a warning. He argues that the fact Minor continued the stop for another fifteen minutes rendered the detention unconstitutional, and the evidence discovered as a result of it should have been suppressed.

The problem for Vargas is that Minor did not complete his duties between the time the stop was made and the time Castro consented to the search of the vehicle, or for that matter at any time during the search. Minor had stopped Castro because he was not operating his vehicle in a safe manner — he was tailgating and he did not stay in his lane. In the course of permissible "ordinary inquiries," he discovered that Castro did not have a driver's license, so Castro could not legally operate the vehicle. In an attempt to find someone who could, Minor asked Vargas if he had a driver's license but Vargas didn't have one either. Finally, Minor went even further in his attempt to end the detention and get the vehicle off the side of the interstate highway. He asked Castro and Vargas if they knew someone with a license they could call to drive the vehicle away. They didn't. All of Minor's actions were taken in the lawful discharge of his duties, which included enforcement of the law requiring that any person driving a vehicle be licensed to do so. That is, in the words of the <u>Rodriguez</u> opinion, "fairly characterized as part

6

of [his] traffic mission." Id. at 1615. It was after Minor discovered that neither man had a driver's license, and while the continued detention was still lawful, that Minor asked Castro for permission to search the vehicle. And unlike the driver in Rodriguez, Castro consented.

The fact that Minor had earlier informed Castro that he was issuing a warning is irrelevant. Under state law Minor had a duty not to allow Castro or Vargas, who were unlicensed, to drive the vehicle. Preventing them from driving off without a license is lawful enforcement of the law, not unlawful detention. What prolonged the stop was not Minor's desire to search the vehicle but the fact that both occupants of it could not lawfully drive it away. The district court's ruling that the seizure did not violate the Fourth Amendment was correct.

**AFFIRMED.**