[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15011
_____

D.C. Docket No. 1:17-cr-20221-JEM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISABEL YERO GRIMON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 13, 2019)

Before MARCUS, GRANT and HULL, Circuit Judges.

HULL, Circuit Judge:

After pleading guilty, Isabel Yero Grimon appeals her convictions for

possessing 15 or more unauthorized access devices and aggravated identity theft.

Defendant Grimon argues that the factual proffer supporting her guilty plea was insufficient to establish that the unauthorized access devices she possessed affected interstate commerce and, therefore, the district court lacked subject matter jurisdiction. The question presented is whether the district court has subject matter jurisdiction over a criminal case to accept a guilty plea where: (1) the indictment charges a violation of a valid federal criminal statute and sets forth the interstate commerce element of the crime; (2) the factual proffer for the guilty plea states the government at trial would prove that the defendant's conduct affected interstate commerce; but (3) the factual proffer does not contain any underlying facts explaining how the interstate commerce nexus was satisfied.

After review, and with the benefit of oral argument, we conclude that the interstate commence element in § 1029(a)(3) is not "jurisdictional" in the sense of bearing on whether the district court has subject matter jurisdiction to adjudicate a case, and thus the government's alleged failure to prove sufficiently the interstate commerce nexus does not deprive the district court of its subject matter jurisdiction over Grimon's criminal case. Thus, we affirm Grimon's convictions.

## I. BACKGROUND

### A.    Arrest

On January 18, 2017, officers conducted a traffic stop of Grimon's vehicle after observing her swerving between lanes and determining, through a records

2

check, that there was an active warrant for her arrest out of Texas. Grimon was arrested on the active warrant, and officers conducted a search incident to that arrest.

During the search, officers found 19 blank credit cards in Grimon's vehicle, 16 of which were encoded with account numbers issued to 10 other persons. Officers also recovered a thumb drive from Grimon, which contained 134 credit card account numbers issued to other persons. Grimon admitted that (1) she knew the blank cards were re-encoded with credit card account numbers issued to other persons, (2) the credit card numbers on the thumb drive did not belong to her, and (3) she was not authorized to possess those account numbers by their owners.

**B.    Indictment and Plea**

In March 2017, a federal grand jury charged Grimon with (1) one count of possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 1), and (2) three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 2-4). Count 1 specifically charged that Grimon knowingly, and with intent to defraud, possessed 15 or more unauthorized access devices and that "said conduct affect[ed] interstate and foreign commerce."

In July 2017, pursuant to a written plea agreement, Grimon pled guilty to Counts 1 and 2 of the indictment, and the government agreed to dismiss Counts 3

3

and 4. In connection with her plea agreement, Grimon executed a factual proffer detailing the offense conduct described above. As to all of the elements of Count 1, Grimon's factual proffer stated that, had the case gone to trial, the government would have proved beyond a reasonable doubt that Grimon "did knowingly, and with intent to defraud, possess fifteen (15) or more devices which are counterfeit and unauthorized access devices, said conduct affecting interstate and foreign commerce."

At the change of plea hearing, Grimon confirmed, through an interpreter, that she received a copy of the indictment and had an opportunity to fully discuss the charges with her attorney. The government summarized the charges in Counts 1 and 2. In doing so, the government explicitly stated with respect to Count 1 that one of the elements of the offense "is that the Defendant's conduct in some way affected commerce between one state and other states or between a state of the United States and a foreign country." Grimon then confirmed that she understood the charges to which she was pleading guilty. The government also read the factual proffer into the record. That proffer included a stipulation that the government would have proven at trial that Grimon "did knowingly and with intent to defraud, possess 15 or more devices which are counterfeit and unauthorized access devices, said conduct affecting interstate and foreign commerce."

4

After this recitation, through an interpreter, Grimon agreed that the government's recitation of the facts was correct and that it could prove those facts at trial. Grimon also confirmed that she had read and discussed the factual proffer with her attorney before signing it. Grimon's attorney stated that he was bilingual and was able to translate the factual proffer into Spanish for Grimon, that he explained the factual proffer to her, and that he was confident she understood its contents.

Grimon pled guilty to Counts 1 and 2, and the district court accepted her plea. The district court found that Grimon was "fully competent and capable of entering an informed plea" and that "her pleas of guilty [were] knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offenses."

## C.    Sentence

Following a sentencing hearing, the district court sentenced Grimon to 12 months' imprisonment on her § 1029(a)(3) access device conviction in Count 1, followed by a mandatory consecutive term of 24 months' imprisonment on her § 1028A(a)(1) aggravated identity theft conviction in Count 2. Grimon's total sentence is thus 36 months' imprisonment. At that time, the district court dismissed Counts 3 and 4 of the indictment.

Grimon now appeals her convictions.[1]

## II. DISCUSSION

On appeal, Grimon argues that the district court lacked subject matter jurisdiction over her offenses because the factual proffer (1) merely stipulated to the interstate commerce element of her access device offense and (2) did not contain any underlying facts showing that her possession of counterfeit credit cards and account numbers affected interstate commerce. Grimon stresses that the credit cards were never used.

The government responds that its indictment charged Grimon with violating a valid federal statute, alleged an offense against the United States and, therefore, invoked the district court's subject matter jurisdiction. The government argues that even if Grimon's stipulation—that her conduct affected interstate commerce—was an insufficient factual basis for the interstate commerce element of her offense, that did not deprive the district court of subject matter jurisdiction to accept her plea.

Whether the district court had "subject matter jurisdiction is a question of law that we review de novo even when raised for the first time on appeal." United States v. Iguaran, 821 F.3d 1335, 1336 (11th Cir. 2016).

---

[1]On appeal, Grimon does not challenge the district court's sentencing guidelines calculations or the procedural or substantive reasonableness of her sentence.

6

## A.    Subject Matter Jurisdiction

"Subject matter jurisdiction," which Congress bestows on the lower federal courts by statute, "defines the court's authority to hear a given type of case." United States v. Morton, 467 U.S. 822, 828, 104 S. Ct. 2769, 2773 (1984); United States v. Brown, 752 F.3d 1344, 1348 (11th Cir. 2014).  In the context of federal crimes, Congress has granted federal district courts original jurisdiction "of all offenses against the laws of the United States."  Brown, 752 F.3d at 1348; 18 U.S.C. § 3231.  As such, "[s]o long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges 'an offense against the laws of the United States,' and, thereby, invokes the district court's subject-matter jurisdiction."  Brown, 752 F.3d at 1354; see also Alikhani v. United States, 200 F.3d 732, 734–35 (11th Cir. 2000).  An effect on interstate commerce may be required for Congress to have authority under the Commerce Clause to forbid the conduct and make it a federal crime in the first place.  United States v. Lopez, 514 U.S. 549, 562, 115 S. Ct. 1624, 1631 (1995).  But if an indictment itself alleges a violation of a valid federal statute, the district court has subject matter jurisdiction of that case.

In contrast to subject matter jurisdiction, some federal statutes do contain what is referred to as a "jurisdictional element"—that is, an element of the offense requiring the government to prove that the defendant's offense had some nexus

7

with interstate or foreign commerce.  See, e.g., United States v. Suarez, 893 F.3d 1330, 1333 (11th Cir. 2018) ("This statute contains a jurisdictional element—the offense, in the case of an attempt, 'would have affected interstate or foreign commerce.'" (quoting 18 U.S.C. § 2332a(a)(2)(D))).  In this very case, § 1029(a)(3), under which Grimon was convicted in Count 1, contains such an interstate commerce element.  18 U.S.C. § 1029(a)(3).  Specifically, § 1029(a)(3) provides that whoever "knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices . . . shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section."  Id. (emphasis added).

Nonetheless, interstate commerce jurisdictional elements, such as § 1029(a)(3)'s, are not "jurisdictional" in the sense of bearing on whether or not the district court has subject matter jurisdiction or authority to adjudicate the case.  See Alikhani, 200 F.3d at 735.  Rather, the interstate commerce element is "jurisdictional" only in the sense that it relates to the power of Congress to regulate the forbidden conduct.  See id.; see also Lopez, 514 U.S. at 561-62, 115 S. Ct. at 1631 (indicating that interstate commerce elements are meant to limit the reach of federal statutes to ensure the conduct they regulate falls within Congress's Commerce Clause powers).

8

This Court has therefore explained that, when it comes to federal criminal statutes requiring an interstate commerce nexus, the government's failure to sufficiently allege or prove the interstate commerce element does not deprive the district court of its subject matter jurisdiction over the criminal case. Alikhani, 200 F.3d at 735. This Court in Alikhani reasoned that, while "[a]n effect on interstate commerce may be required for Congress to have authority under the Commerce Clause to forbid certain conduct," that "does not imply that a district court faced with an insufficient interstate-commerce nexus loses subject-matter jurisdiction of the case." Id. Stated differently, even if an indictment fails to allege sufficient facts to support, or the government does not present sufficient evidence to prove, an interstate commerce nexus, the district court still has subject matter jurisdiction to adjudicate the case under § 3231, including, for example, the power to dismiss the indictment for failure to allege facts showing the defendant committed the charged offense. See id.; see also Brown, 752 F.3d at 1348-49 (discussing Alikhani).

Here, Grimon makes the same argument this Court explicitly rejected in Alikhani. Grimon asserts that because her stipulated factual proffer merely stated that her § 1029(a)(3) offense affected interstate commerce, without providing supporting facts to explain how her conduct affected interstate commerce, the district court lacked subject matter jurisdiction over her case. But as this Court

9

explained in <u>Alikhani</u>, the government's alleged failure to sufficiently establish an interstate commerce nexus does not deprive the district court of its subject matter jurisdiction under § 3231.  <u>See</u> <u>Alikhani</u>, 200 F.3d at 735.  All that was required for the district court to exercise subject matter jurisdiction over Grimon's case was an indictment charging her with a violation of a valid federal law enacted in the United States Code, and the indictment here did just that.  <u>See</u> <u>Brown</u>, 752 F.3d at 1354.  The indictment tracked the statutory language in § 1029(a)(3), charging that Grimon:

> did knowingly, and with intent to defraud, possess fifteen (15) or more counterfeit and unauthorized access devices, that is, counterfeit credit cards encoded with account numbers issued to other persons and credit card account numbers issued to other persons, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1029(a)(3) and 2.

Whether that indictment sufficiently alleged, or Grimon's subsequent factual proffer sufficiently demonstrated, an interstate nexus is merely a non-jurisdictional challenge to the sufficiency of the evidence as to that element of the offense and has no bearing on the district court's power to adjudicate her case or subject matter jurisdiction.  <u>See</u> <u>Alikhani</u>, 200 F.3d at 735.  Thus, we reject Grimon's claim that the district court lacked subject matter jurisdiction to accept her plea.

**B.    <u>Iguaran</u>**

We recognize that Grimon relies on this Court's decision in <u>United States v. Iguaran</u>, 821 F.3d 1335 (11th Cir. 2016).  But as we explain below, that reliance is

10

misplaced.  Iguaran dealt with a wholly different statutory scheme, which, unlike § 1029(a)(3), specifically requires the district court to make a preliminary determination regarding subject matter jurisdiction—not just an interstate commerce "jurisdictional element"—before proceeding with a case.

In Iguaran, the defendant pled guilty to a cocaine conspiracy offense under the Maritime Drug Law Enforcement Act ("MDLEA").  Id. at 1336.  Among other things, the statutory text of the MDLEA "makes it a crime to conspire to distribute a controlled substance while on board 'a vessel subject to the jurisdiction of the United States.'"  Id. (quoting 46 U.S.C. §§ 70503(a)(1), 70506(b)).  Unlike the interstate commerce element in § 1029(a)(3), this "vessel subject to the jurisdiction of the United States" requirement in the MDLEA is "jurisdictional" in the true, subject matter jurisdiction sense of the word.  See id.  Specifically, the MDLEA expressly states that "'[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense.'"  Id. (quoting 46 U.S.C. § 70504(a)).  Instead, "'[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.'"  Id. (quoting 46 U.S.C. § 70504(a)).

In light of this statutory language in the MDLEA, this Court has "interpreted the on board a vessel subject to the jurisdiction of the United States" provision "as a congressionally imposed limit on courts' subject matter jurisdiction, akin to the

11

amount-in-controversy requirement contained in 28 U.S.C. § 1332." Id. (internal quotation marks and citation omitted).  Consequently, for a district court to have adjudicatory authority over a charge that the defendant conspired to violate a substantive crime defined in the MDLEA, the government must make a preliminary showing that the vessel was, when apprehended, subject to the jurisdiction of the United States.  Id.

In Iguaran, this Court vacated the defendant's guilty plea because the district court did not make any factual findings with respect to its subject matter jurisdiction under the MDLEA, and the record contained no facts from which such jurisdiction could be determined.  See id. at 1337–38.  We then remanded the case to the district court for the limited purpose of determining whether subject matter jurisdiction existed, after affording both parties an opportunity to present evidence bearing on whether Iguaran's vessel was subject to the jurisdiction of the United States.  Id. at 1338.

Though Grimon is correct that this Court held in Iguaran that parties may not stipulate to jurisdiction, but rather only to underlying facts that bear on the jurisdictional inquiry, that holding is simply irrelevant to her case.  Id. at 1337.  Iguaran involved the MDLEA, where the statutory text made clear that "jurisdiction" is not merely an element of the offense.  See id. at 1336 ("'Jurisdiction of the United States with respect to a vessel subject to this chapter is

12

not an element of an offense.'" (emphasis added) (quoting 46 U.S.C. § 70504(a))). Iguaran, as explained above, dealt with a statutory requirement that was truly "jurisdictional"—that is, without facts showing that Iguaran's vessel was subject to the jurisdiction of the United States, the district court in that case had no authority to adjudicate his case.  Id.

Here, by contrast, § 1029(a)(3) did not require the district court to determine that Grimon's offense affected interstate commerce to have subject matter jurisdiction.  See 18 U.S.C. § 1029(a)(3).  Rather, the interstate nexus requirement was simply one of several elements of Grimon's § 1029(a)(3) offense that the government had to prove.  See id.; United States v. Klopf, 423 F.3d 1228, 1240 (11th Cir. 2005) (indicating that an effect on interstate or foreign commerce is an element for offenses under § 1029(a)).  Neither Iguaran nor any other case cited by Grimon has held that this interstate nexus requirement is akin to the amount in controversy requirement in 28 U.S.C. § 1332 or to the jurisdictional requirement in the MDLEA.  And we squarely hold that it is not.  So, whether the government proved the interstate commerce nexus or failed to prove it, the district court still had subject matter jurisdiction over Grimon's case and her Count 1 conviction. See Alikhani, 200 F.3d at 735.

As to her aggravated identity theft conviction in Count 2, Grimon's statute of conviction, 18 U.S.C. § 1028A(a)(1), itself does not contain an interstate

13

commerce element. See 18 U.S.C. § 1028A. However, because a conviction under § 1028A is predicated on the unlawful transfer, possession, or use of a means of identification "during and in relation to [an enumerated] felony violation," Grimon argues that, if the district court lacked subject matter jurisdiction over the § 1029(a)(3) offense in Count 1, it likewise lacked subject matter jurisdiction over the § 1028A(a)(1) offense in Count 2. For the reasons stated above, we reject Grimon's jurisdiction claim as to Count 2 as well.

## C.    No Other Claim

As a final matter, Grimon's brief on appeal did not raise any error or argument other than the subject matter jurisdictional one addressed above. More specifically, as the government points out, Grimon has not raised on appeal, and has therefore abandoned, any claim or argument that the alleged insufficiency of the factual proffer as to the interstate commerce element violated Federal Rule of Criminal Procedure 11 or rendered her plea unknowing or involuntary. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (explaining that issues not raised on appeal are deemed abandoned).

Accordingly, we do not address whether any alleged insufficiency in Grimon's factual proffer as to the interstate commerce element of her § 1029(a)(3) offense invalidated her guilty plea. Because Grimon has raised no claim of Rule 11 error, we also do not address the government's argument that the doctrine of

14

invited error applies because Grimon agreed in her factual proffer that the government could have established at trial that her conduct affected interstate or foreign commerce.

### III. CONCLUSION

For the foregoing reasons, we affirm Grimon's two convictions.

**AFFIRMED.**