**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-12337

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

OSCAR JOSE CARRENO FERNANDEZ,
   a.k.a. Oscar Correno,

*Defendant-Appellant.*

————————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20592-BB-3

————————————————

————————————————

No. 23-12338

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

2                     Opinion of the Court                     23-12337

*Plaintiff-Appellee,*

*versus*

LUIS JOSE ALFONZO RODRIGUEZ,
  a.k.a. Luis Jose Alfonzo,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20592-BB-4
_____

_____

No. 23-12376
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JESUS ALBERTO HERNANDEZ OSORIO,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20592-BB-1
_____

Before JORDAN, KIDD, and MARCUS, Circuit Judges.

PER CURIAM:

Jesus Alberto Hernandez Osorio, Oscar Carreno Fernandez, and Luis Jose Alfonzo Rodriguez were indicted on and pled guilty to one count of knowingly conspiring to possess with intent to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C §§ 70503(a)(1), 70506(a) & (b) and 21 U.S.C. § 960(b)(1)(B). According to their stipulated factual proffers, the defendants had been found off the coast of Venezuela in a go-fast vessel that was transporting 955 kilograms, or over a ton, of cocaine, to the United States. In this consolidated appeal, the defendants argue that their indictment should have been dismissed because (a) the prosecution violated due process because (i) the Maritime Drug Law Enforcement Act ("MDLEA") is void for vagueness, (ii) there was no nexus between their conduct and the United States, and (iii) they were not read warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), when officers boarded the vessel; (b) the vessel was interdicted in the Exclusive Economic Zone ("EEZ") of Venezuela, not the "high seas" as required by the MDLEA; (c) the Netherlands conducted the enforcement action; and (d) the government failed to sufficiently establish statutory jurisdiction by showing that the vessel was without nationality. The defendants also challenge the below-guidelines 75-month sentence the district court imposed on each of them, arguing that they were entitled minor role reductions. After careful review, we affirm.

## I.

While we usually review the denial of a motion to dismiss an indictment for abuse of discretion, we review it de novo when

it involves the district court's subject matter jurisdiction. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024). We review the district court's determination of a defendant's role in his offense for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The district court has "considerable discretion" in deciding the fact-intensive question of whether a defendant played a minor role in the offense, *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002), and we will not upend a district court's sentencing determination unless we are left with a "'definite and firm conviction that a mistake'" was made, *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). If there are "two permissible views of the evidence as to the defendant's role in the offense," clear error will rarely exist "so long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law." *Id.* (citation modified).

"[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Unpublished decisions are not binding precedent. *United States v. Morris*, 131 F.4th 1288, 1293 n.3 (11th Cir. 2025).

A defendant abandons a claim he does not raise in his initial brief. *United States v. Grimon*, 923 F.3d 1302, 1308 (11th Cir. 2019). "If pertinent and significant authorities come to a party's attention after the party's brief has been filed," the party may advise this Court by filing a letter with us. Fed. R. App. P. 28(j).

## II.

First, we are unpersuaded by the defendants' challenges to their indictments.  The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b).  A "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality," such as "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." *Id.* § 70502(c)(1)(A), (d)(1)(B).  "A claim of nationality or registry . . . includes only" the possession and production of documents evidencing the vessel's nationality, the flying of its nation's flag, or "a verbal claim of nationality or registry by the master or individual in charge of the vessel." § 70502(e).  "'The government bears the burden of establishing that the statutory requirements of MDLEA subject-matter jurisdiction are met.'" *Alfonso*, 104 F.4th at 820.

In *United States v. Cabezas-Montano*, the United States Coast Guard ("USCG") stopped a go-fast vessel ("GFV") with three passengers on board travelling at a high rate of speed about 200 miles off the coast of Central America.  949 F.3d 567, 577–78 (11th Cir. 2020).  A team with a Spanish translator boarded the GFV and began asking right-of-visit questions to determine the GFV's nationality.  *Id.* at 579–80.  The team asked the passengers twice if anyone wished to make a claim of nationality, and no one responded.  *Id.*

at 580. The team asked if any passenger was the master of the vessel, and while initially silent, when asked a second time, the passengers began pointing to one another as the masters. *Id.* The team again asked who the GFV's master was, and the passengers continued to point to one another without speaking. *Id.* The team then determined that the GFV was without nationality. *Id.*

On appeal, the defendants argued that the government did not establish MDLEA jurisdiction by showing that the GFV was without nationality. *Id.* at 588–89. We disagreed, noting that when the boarding team asked each defendant who the master of the GFV was, the defendants pointed at each other, but otherwise did not respond. *Id.* at 589. The boarding team also asked the defendants individually if anyone wished to make a claim of nationality for the GFV, and again no one responded. *Id.* We recognized that the boarding team did not ask who was "in charge" of the GFV, but that the team's questions were nevertheless sufficient because they asked each defendant if anyone wished to make a claim of nationality. *Id.* at 589 n.14. Thus, any individual who possessed authority to make a claim of nationality had the opportunity to do so. *Id.*

Later, in *United States v. Nunez*, we recognized that, sometimes, vessels may have no master or individual in charge. 1 F.4th 976, 986 (11th Cir. 2021). There, USCG officers intercepted a small boat on the high seas. *Id.* at 980. One officer asked the four men on the boat "who was the master, who was in charge," and no one answered. *Id.* at 981. The officer then asked who piloted the boat, and one man said that they took turns, and the others appeared to

agree by their body language. *Id.* Ultimately, about 180 kilograms of cocaine were recovered from the boat, and the four men were indicted for violating the MDLEA. *Id.* at 982.

Before trial, the government moved for a ruling that the United States had jurisdiction because the boat was a stateless vessel, and the defendants moved to dismiss the indictment for lack of jurisdiction and requested an evidentiary hearing. *Id.* At a pretrial hearing, the district court held that it had jurisdiction under the MDLEA because the boat was stateless, as indicated by the lack of indica bearing nationality on the boat, lack of paperwork or identification numbers on the boat, and the fact that "no crew member claimed nationality or registry of the vessel." *Id.* (citation modified). It further ruled it was not required to hold an evidentiary hearing on the issue because the defendants did not contest the jurisdictional facts, nor had they identified evidence they hoped to introduce showing a lack of jurisdiction. *Id.* Following a trial, the defendants were found guilty. *Id.* at 983.

On appeal, we ruled that the United States had jurisdiction over the defendants under the MDLEA. *Id.* We explained that the boat "had no master or individual in charge who could make a verbal claim of registry under section 70502(e)," since no one onboard claimed to be the master or individual in charge and they all appeared to agree that they took turns driving the boat. *Id.* at 985. We pointed to the record evidence showing that the defendants were "equals," and that there was "no evidence of a hierarchy among" them. *Id.* We ruled that § 70502(d)(1)(B)'s requirement

"applies only when the master or individual in charge is aboard the vessel" and that USCG officers are not required to ask the crew to make a claim of nationality or registry when there is no master or individual in charge aboard the vessel. *Id.* at 985–86. We further ruled that the district court did not abuse its discretion in denying the defendants' request for an evidentiary hearing on the issue, because the MDLEA did not require a hearing to be held, and the defendants did not identify any facts they would have contested nor proffer evidence they would have presented at the hearing. *Id.* at 988.

As for Congress's authority under Article I, Section 8, Clause 10 of the Constitution, Congress has "(1) 'the power to define and punish piracies,' (the Piracies Clause); (2) 'the power to define and punish felonies committed on the high [S]eas,' (the Felonies Clause); and (3) 'the power to define and punish offenses against the law of nations' (the Offences Clause)." *Alfonso*, 104 F.4th at 820; *see also* U.S. Const. art. I, § 8, cl. 10.

In *Alfonso*, the defendants appealed their convictions under the MDLEA, arguing that the district court improperly denied their motion to dismiss their indictment because the MDLEA was unconstitutional as applied to them under the Felonies Clause. 104 F.4th at 818–19. The defendants claimed that, because they were seized in the Dominican Republic's EEZ, their offense did not occur in the high seas, meaning the court did not have authority to prosecute them under the MDLEA. *Id.* As a matter of first impression, we ruled that a nation's EEZ is "part of the 'high seas' for

purposes of the Felonies Clause in Article I of the Constitution," and thus, "enforcement of the MDLEA in EEZs is proper." *Id.* at 823, 827. We also explained that "international law does not limit the Felonies Clause." *Id.* at 826. We concluded that the district court appropriately denied the defendants' motion to dismiss the indictment. *Id.* at 827; *see also United States v. Canario-Vilomar*, 128 F.4th 1374, 1382 (11th Cir. 2025) (reaffirming *Alfonso*'s holding), *cert. denied*, No. 25-5506 (U.S. Oct. 6, 2025).

The *Alfonso* defendants also argued that the MDLEA prosecution against them violated the Due Process Clause and exceeded Congress's authority under the Felonies Clause because "the drug offenses they were charged with and convicted of bore no nexus to the United States." 104 F.4th at 818 n.4. In response, we noted that the argument was foreclosed by binding precedent. *Id.* (citing *Cabezas-Montano*, 949 F.3d at 587 (explaining that "this Court has held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes without a 'nexus' to the United States")); *see also Canario-Vilomar*, 128 F.4th at 1382–83 (reaffirming the holding in *Alfonso* and prior precedent that due process does not require that the conduct prohibited under the MDLEA have a nexus to the United States).

We recently rejected a defendant's void-for-vagueness challenge against the MDLEA. *United States v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir.), *cert. denied*, 144 S. Ct. 178 (2023). There, the defendant argued that the MDLEA was "overly vague and ambiguous" because it did not require the USCG "to explain what it means

to 'make a claim of nationality or registry for the vessel.'" *Id.* We disagreed, holding that the MDLEA was "sufficiently clear to give ordinary people notice that, without a claim of nationality or registry for the vessel upon request, the vessel will be considered stateless for purposes of jurisdiction under the MDLEA." *Id.*

In that same case, we also rejected the defendant's argument that the MDLEA violated his *Miranda* rights because it did not require law enforcement to inform the master of vessel the consequences of failing to make a claim of nationality. *Id.* We analyzed the issue as an as-applied and facial challenge. *Id.* Under the as-applied standard, we ruled that the defendant's argument was waived by his guilty plea, because a valid guilty plea rendered the issue irrelevant. *Id.* To the facial challenge, we ruled that prior precedent foreclosed the argument, since we've long recognized that a USCG's routine stop, boarding, and inspection of an American vessel on the high seas did not qualify as a custodial detention triggering *Miranda* protections. *Id.* (citing *United States v. Rioseco*, 845 F.2d 299, 302–03 (11th Cir. 1988)).

We add that foreign countries regularly cooperate with the United States in MDLEA prosecutions. For instance, in *United States v. Hurtado*, a British vessel with a United States law enforcement detachment stopped a vessel in international waters, the British vessel engaged in the right-of-approach questioning, and the United States law enforcement personnel aboard the British vessel reported the answers to those questions to a nearby USCG district responsible for coordinating and commanding actions in that area.

89 F.4th 881, 886–87 (11th Cir. 2023); *see also Canario-Vilomar*, 128 F.4th at 1377–78 (MDLEA prosecution initiated by a Dutch Maritime Patrol Aircraft spotting a GFV near Colombia, with a helicopter and USCG boat dispatched to make contact with the GFV). We recognized that right-of-approach questioning to ascertain the nationality of a vessel in international waters was allowed under international laws, and "can be conducted by a law enforcement vessel in international waters as a matter of course." *Hurtado*, 89 F.4th at 886–87. These principles take into account "treaties, the MLDEA, and international law." *Id.* at 893 (citation modified).

As for treaties and international law, the United States is a signatory to the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, Dec. 20, 1988, 1582 U.N.T.S. 95. In that treaty, the United States and 105 United Nation States, including Denmark, agree to cooperate with one another in ending the illicit international trafficking of narcotics. The United States, Netherlands, and other countries also are part of the Agreement Concerning Co-Operation in Suppressing Illicit Maritime and Air Trafficking in Narcotic Drugs and Psychotropic Substances in the Caribbean Area, which aims to further expand the U.N. Convention Against Illicit Traffic in the Caribbean Region.

Here, most of the defendants' arguments are foreclosed by our binding precedent. This includes their arguments that: (1) the MDLEA is void for vagueness, *see Gruezo*, 66 F.4th at 1292; (2) the lack of a nexus between their offense conduct and the United States warrants dismissal, *see Alfonso*, 104 F.4th at 818 n.4; *Cabezas-*

*Montano*, 949 F.3d at 587; *Canario-Vilomar*, 128 F.4th at 1380, 1382–82; (3) the offense conduct did not occur in the high seas because their offense conduct occurred in Venezuela's EEZ, *see Alfonso*, 104 F.4th at 823, 827; and (4) the MDLEA violates *Miranda*, *see Gruezo*, 66 F.4th at 1292.  We are bound by this precedent unless and until the Supreme Court, or this Court sitting en banc, holds otherwise, and that has not occurred.  *See Archer*, 531 F.3d at 1352.

The defendants' remaining arguments similarly have no merit.  As for their argument that the government failed to prove that the vessel was without nationality, we disagree.  As the record reflects, the USCG officers who conducted the right-of-approach questioning asked each defendant if he was the master or captain of the vessel, and each refused to answer.  Under our binding case law, because no one answered and the record evidence otherwise indicated that the defendants were equals on the vessel, the USCG officers were not then required to ask the defendants to make a claim of nationality.  *See Nunez*, 1 F.4th at 986.  *Nunez* is our binding precedent on this issue; *United States v. Guerro*, 789 F. App'x 742, 744 (11th Cir. 2019), an unpublished decision, is not.  Moreover, to the extent the defendants argue the district court was required to hold an evidentiary hearing on the issue, *Nunez* expressly rejected this claim, especially since the defendants did not identify any facts they would have contested at the hearing nor proffer evidence they would have presented.  *See Nunez*, 1 F.4th at 986.

The defendants' reliance on *Cabezas-Montano* is misplaced.  There, unlike here, the defendants were attempting to paint each

other as the GFV's master, so the USCG officer did not ask for the individual in charge; instead, the officer asked if anyone wished to make a claim of nationality. 949 F.3d at 580, 589 n.14. *Nunez* made it clear that, in instances like the one before us -- where the passengers aboard the GFV do not answer who is the master or individual in charge of the vessel, and the circumstances show that they are equals in their role on the GFV -- the USCG is not required to ask the defendants to make a claim of nationality. 1 F.4th at 986.

As for the defendants' argument that the involvement of the Netherlands in the interdiction stripped the government of jurisdiction, we also are unpersuaded. For one thing, the defendants have not cited any authority disallowing foreign countries other than the United States to assist in interdicting a vessel in international waters. Instead, the use of other foreign countries' vessels or crew is commonplace. *See Hurtado*, 89 F.4th at 886–87; *Canario-Vilomar*, 128 F.4th at 1277–78. Moreover, the United States is party to at least two agreements with other countries, including the Netherlands, to assist one another in curbing illicit international drug trafficking. *See* U.N. Convention Against Illicit Traffic at 2–3, 11; *see also* Caribbean Regional Agreement. Further, we've recognized the authority that other countries have to conduct right-of-approach questioning on vessels in MDLEA prosecutions. *See Hurtado*, 89 F.4th at 886–87. Thus, the district court did not err in denying the defendants' motions to dismiss the indictment on this basis or the others we've discussed, and we affirm.

**III.**

We also find no merit to the defendants' claim that the district court clearly erred in denying them minor role adjustments at sentencing.  The Sentencing Guidelines provide that a defendant is entitled to a two-level decrease in his offense level if he was a minor participant in the criminal activity.  U.S.S.G. § 3B1.2(b) (2021).  Under the Guidelines, a minor participant role reduction applies to a defendant who is substantially less culpable than the average participant in the criminal activity and less culpable than most other participants in the criminal activity "but whose role could not be described as minimal."  *Id.* § 3B1.2, cmt. n.3(A), 5.[1] Defendants bear the burden of establishing by a preponderance of the evidence that they are entitled to minor role reductions.  *United States v. Valois*, 915 F.3d 717, 731 (11th Cir. 2019).

Determining whether a defendant is entitled to a minor role reduction is a fact intensive inquiry based on the totality of the circumstances.  U.S.S.G. § 3B1.2, cmt. n. 3(C); *Cruickshank*, 837 F.3d at 1195.  Two principles guide the determination of whether a defendant played a minor role in the criminal scheme: (1) "the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing," and (2) his "role as compared to that of

---

[1] If "'uncertainty does not exist'" in a Sentencing Guideline, courts "may not defer" to the commentary to that Guideline.  *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (en banc).  However, we've relied on commentary where "[n]o party contest[ed] the commentary's validity . . . or the propriety of its interpretation of [the Guideline's] text."  *United States v. Jews*, 74 F.4th 1325, 1327 n.2, 1328 (11th Cir. 2023).  Here, both parties rely on the commentary and do not dispute its validity, so we may consider and defer to it.

other participants in [his] relevant conduct." *De Varon*, 175 F.3d at 940. Under *De Varon*'s first principle, "the inquiry is whether the defendant 'played a relatively minor role in the conduct for which [he] has already been held accountable -- not a minor role in any larger criminal conspiracy.'" *Valois*, 915 F.3d at 732. "[W]hen a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." *De Varon*, 175 F.3d at 942–43. Additionally, "the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct." *Id.* at 943. In fact, the amount of drugs in a defendant's possession "may be dispositive" in "extreme" cases. *Id.*

Under *De Varon*'s second prong, in comparing the defendant's role to that of other participants, only those participants who were involved in the relevant conduct attributed to the defendant are relevant. *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015). "Even if a defendant played a lesser role than the other participants, that fact does not entitle [him] to a role reduction 'since it is possible that none are minor or minimal participants.'" *Id.* A defendant "may not prove he is entitled to a minor-role reduction by pointing to a broader criminal scheme in which he was a minor participant but for which he was not charged." *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023).

The district court should also consider the following factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmt. n.3(C) (2021).

The Commentary further instructs that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* Likewise, "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting . . . drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported . . . may receive an adjustment under this guideline." *Id.* § 3B1.2, cmt. n.3(A). Essentially, "[t]he court must consider all of [the § 3B1.2] factors to the extent

applicable, and it commits 'legal error in making a minor role decision based solely on one factor.'" *Valois*, 915 F.3d at 732; *see also Cruickshank*, 837 F.3d at 1195 (concluding that, "although nothing . . . precludes a district court from considering the drug quantity with which the defendant was involved as an indicator of his role, we think it was legal error for the district court to say that this is the *only* factor to be considered").

We've repeatedly affirmed district court decisions denying minor role reductions in MDLEA prosecutions where the defendants were merely transporting large quantities of drugs. *See, e.g.*, *Valois*, 915 F.3d at 731–33. So, for example, in *Valois*, we affirmed where the record showed "that all three defendants knowingly participated in the illegal transportation of a large quantity of cocaine, they were important to that scheme, and they were held responsible only for that conduct." *Id*. We explained that while those facts did not render the defendants ineligible for minor role reductions, they supported the court's denial of them. *Id*. at 732.

Recently, the Sentencing Commission amended the Sentencing Guidelines. U.S.S.G. § 2D1.1(e)(2) (2025). Nevertheless, the Commission did not make the 2025 amendment retroactively applicable. *Id*. § 1B1.10(d) (2025). Instead, the amendment is effective November 1, 2025. *Id*.; U.S.S.G. App. C, Amend. 833 (eff. Nov. 1, 2025). Generally, in reviewing a district court's application of the Sentencing Guidelines, we apply the version of the Guidelines in effect at the time of the defendants' sentencing. *United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011). New amendments

should be considered on appeal regardless of this general principle only if the new amendment is considered "clarifying" instead of "substantive." *Id.* While clarifying amendments are given retroactive application on appeal, substantive amendments are not. *Id.* We've developed a multi-factored analysis to determine whether an amendment is clarifying or substantive. *Id.* at 1185.

Here, the district court did not clearly err in denying the defendants minor role reductions. First, as for the defendants' argument that the district court failed to adequately compare their actions in comparison to the others in the *overall* drug trafficking scheme, the district court was not required to make these comparisons. *See Gruezo*, 66 F.4th at 1294; *see also Martin*, 803 F.3d at 591. While there very likely are unidentified and uncharged individuals in the overarching drug trafficking scheme, including those who manufactured the cocaine and those who waited in the United States to obtain the cocaine and distribute it, those individuals were not charged in the current case. This means that they are irrelevant to the minor role evaluation, so the court did not clearly err in failing to consider these other unknown and unnamed individuals when it properly considered the defendants' roles in the smaller conspiracy scheme to possess with intent to distribute while on board a vessel.

As for the argument that the court failed to adequately compare each defendant to another, the record does not support it. At each of the defendants' sentencing hearings, the court found that the defendant engaged in the "same" or "equal" offense conduct as

the others. The court noted that "it was a jointly undertaken activity in which to travel aboard this vessel in order to transport these 38 bales of cocaine"; that all "of the individuals navigated the vessel together"; and that "there's no evidence otherwise." These findings were consistent with the defendants' identical factual proffers and presentence investigation reports (PSIs), which specified that none of the individuals on the GFV had identified himself, or been identified as the master of vessel. While Hernandez Osorio claimed in his objections to the PSI that another defendant was the "boat's captain," he did not identify the defendant or offer evidence in support. And even if one defendant played a smaller role than another, this circumstance alone would not entitle that defendant to a role reduction. *Martin*, 803 F.3d at 591. Thus, the district court did not clearly err in comparing each defendant's role to the others in the smaller conspiracy scheme to possess with intent to distribute while on board a vessel.

Further, the record reflects that the court appropriately considered the *De Varon* factors in addition to the factors found in the Commentary and did not focus solely on drug quantity. Among other things, as we've noted, the district court made it clear that these defendants were "certainly not being held accountable for those who might have owned or manufactured the cocaine, or those that ultimately would have a financial interest on the other end, even those who may have been the mastermind of the transport across navigable waters," or those "who acquired the vessel" or were involved "in the planning and in the control." Instead, the court found, Hernandez Osorio, Carreno Fernandez and

Alfonzo Rodriguez were being held accountable for possessing 955 kilograms of cocaine and for attempting to transport that cocaine for distribution, which consisted of them manning a vessel holding over a ton of cocaine that was headed to the United States. *See* U.S.S.G. § 3B1.2, cmt. n. 3(C). The court added that these defendants followed the plan given to them and executed it. On this record, the district court did not clearly err in finding that each of these defendants -- who jointly navigated a go-fast vessel transporting over a ton of cocaine from South America to the United States -- was integral to the conspiracy-to-possess-with-intent scheme, and that they were not entitled to a minor role reduction. *See De Varon*, 175 F.3d at 942–43. This is especially the case since the district court imposed a substantial downward variance from their advisory guideline range of 108 to 135 months' imprisonment to 75 months' imprisonment. *See Valois*, 915 F.3d at 733.[2]

---

[2] Notably, the defendants do not argue on appeal that the recent amendments to the Sentencing Guidelines concerning minor-role reductions should retroactively apply to them. Nor have they moved our Court to allow them to amend their initial briefs to include this argument since the publication of the 2025 Amendment, nor have they filed a Rule 28(j) letter to inform us of this update in the law in support of their sentencing argument. *See* Fed. R. App. P. 28(j). As a result, the defendants have abandoned the issue of retroactivity by failing to raise it and we need not consider whether the 2025 Amendment applies retroactively here. *See Grimon*, 923 F.3d at 1308.

But, in any event, our analysis would not have been affected by any argument concerning the retroactive application of the 2025 Amendment. The 2025 Amendment provides that a minor-role reduction is "generally warranted" for a defendant performing the "lowest level of drug trafficking functions," acting as "a courier, running errands, sending or receiving phone calls

23-12337               Opinion of the Court                    21

Accordingly, we affirm.

**AFFIRMED.**

---

or messages, or acting as a lookout," or involved with "user-level quantities for little or no monetary compensation." U.S.S.G. § 2D1.1(e)(2) (2025). However, the defendants in this case were not acting as "lowest level" couriers, nor were they distributing "user-level quantities for little or no monetary compensation"; rather, they were found to have jointly navigated a go-fast vessel transporting over a ton of cocaine (a very large quantity of cocaine when measured by any metric) off the coast of Venezuela to the United States. What's more, they engaged in the offense conduct for the purpose of obtaining a large sum of money, regardless of whether they actually received the full amount of a promised $25,000.